QUESTIONS: 1. Should a licensed practicing chiropractic physician be considered a licensed physician within the intent of s.196.012(10), F.S.? 2. Should a licensed practicing osteopathic physician be considered a licensed physician within the intent of s. 196.012(10), F.S.?
SUMMARY: The written certification by licensed practicing chiropractic or osteopathic physicians that a person is totally and permanently disabled from a disabling ailment that chiropractic or osteopathic physicians, respectively, are qualified by training and experience, and authorized by statute, to diagnose and treat satisfies the requirement of s. 196.012(10), F.S., and is sufficient professional medical evidence that a person may be eligible for a tax exemption under ss. 196.202 and196.031(3)(b), F.S. Section 196.012(10), F.S. 1971, as amended by Ch. 72-367, Laws of Florida, defined "totally and permanently disabled persons" as: . . . those persons who are currently certified by the Florida department of health and rehabilitative services or two licensed physicians of this state or the veterans' administration to be totally and permanently disabled. (Emphasis supplied.) Chapter 74-234, Laws of Florida, amended s.196.012(10), F.S., to read: (10) "Totally and permanently disabled persons" means those persons who are currently certified by two licensed physicians of this state who are professionally unrelated, or the veterans' administration to be totally and permanently disabled. (Emphasis supplied.) This amendment replaces the original section and that which is omitted is repealed, i.e., authority for total and permanent disability to be certified by the Florida Department of Health and Rehabilitative Services. See 30 Fla. Jur. Statutes s. 142 (1974); AGO's 073-36 and 074-235. The question then arises as to whether the term "licensed physicians" was meant to include practicing chiropractic physicians or practicing osteopathic physicians, as well as practicing licensed doctors of medicine. I have reviewed the provisions of Ch. 196, F. S., and Ch. 12B-1, Part III, Florida Administrative Code, and find no legislative definition or administrative interpretation of the term licensed physicians as it is used in s. 196.012(10). AS TO QUESTION 1: The practice of chiropractic has been a recognized and regulated branch of the healing arts in this state since 1923 (see Ch. 9330, 1923, Laws of Florida, now appearing as Ch. 460, F.S.). As stated in Foster v. Thornton, 152 So. 667 (Fla. 1934), at 668:
The chiropractic method of treatment of human beings for the cure of ills and ailments is recognized by the laws of the state of Florida, and those who practice that method of treating human beings are granted certificates and license to practice that method of treatment, just as physicians of other schools who practice other methods of treatment are granted certificates and license to practice the treatment of ills and ailments according to the methods of other schools. In opinions heretofore rendered by this office, chiropractors have been recognized as "registered," "licensed," or "qualified" physicians within the intent of various statutes of this state. For instance, it has been held that chiropractors are "qualified physicians or surgeons" within the meaning of the medical treatment provisions of the workmen's compensation act, s. 440.13, F.S., see AGO 041-166, March 25, 1941, Biennial Report of the Attorney General, 1941-1942, p. 572, and AGO 064-11, also see Stich v. Independent Life and Accident Insurance Co., 139 So.2d 398 (Fla. 1962); that they were "practicing physicians and surgeons" and entitled to exemption from jury duty under former s. 40.08(2), F.S., see AGO 067-51; and that they are "registered licensed physicians" within the meaning of s. 509.221(9), F.S., and thus authorized to issue health certificates to waiters, waitresses, and food handlers as required by that statute. Note also, that in AGO 048-162, May 10, 1948, Biennial Report of the Attorney General, 1947-1948, p. 580, holding that a licensed naturopath could perform the premarital physical examination required by s. 741.051, F.S., it was stated that the expression "duly licensed physician," as used in said s. 741.051, "is not qualified, confined or limited to the physician practicing any particular branch of the healing arts." It cannot be said, therefore, that the use of the words licensed physicians of itself and without qualification indicates clearly and unequivocally a legislative intent to confine certification under s. 196.012(10), F.S., exclusively to licensed practicing doctors of medicine. See AGO 069-93. If the legislature had wished to so restrict or qualify the term "physicians" to doctors of medicine, it would have been an easy matter for it to have done so since the legislature is presumed to have had knowledge of the several schools of medicine provided for by the statutes. Having failed to differentiate between the practitioners of the several schools provided for by the statutes as legitimate professions, it must be assumed that no such discrimination was intended by the legislature in enacting Ch. 74-234, supra. It would seem that the legislative purpose and intent was to require professional medical evidence that a person is totally and permanently disabled before that person may be eligible for an exemption under s. 196.202, F. S., and s. 196.031(3)(b), F.S., as amended by Ch. 74-264, Laws of Florida. The written certification of two licensed physicians of chiropractic that a person is totally and permanently disabled from a disabling ailment that chiropractic physicians are qualified by training and experience, and authorized by law, to diagnose and treat would appear to satisfy the requirement of, and to be within the intent and purview of, s. 196.012(10), F.S. AS TO QUESTION 2: Section 459.07, F.S., controls your second inquiry and states in part that: (2) Physicians and surgeons of the osteopathic school of medicine are to have all rights and to be of equal rank and grade as the physicians and surgeons of the other three schools of medicine designated as allopathic, homeopathic and eclectic. However, s. 459.13, F.S., reveals that although osteopaths are of equal rank, there are duties, responsibilities, and limits: 459.13 Privileges and obligations of osteopaths. — (1) Osteopathic physicians and surgeons shall observe and be subject to all state and municipal regulations relative to reporting births and deaths and all matters pertaining to the public health, with equal rights and obligations as physicians of other schools of medicine, and such reports shall be accepted by the officers of the departments to which the same are made. (2) Osteopathic physicians and surgeons licensed under this chapter shall have the same rights as physicians and surgeons of other schools of medicine with respect to the treatment of cases or holding of offices in public institutions. (3) It is the intent and purpose of this chapter to grant to osteopathic physicians and surgeons the right to practice as taught and practiced in the standard colleges of osteopathy. The legislative intent, as expressed, would seem to allow osteopathic physicians to make the certification required by s. 196.012(10), F.S., as to whether a person is totally and permanently disabled from a disabling ailment that osteopathic physicians are qualified by training and experience, and authorized by statute, to diagnose and treat. See AGO's 069-44, 072-238, 066-34, and 061-10.